OMAR W. BRANSTITTER, ADMINISTRATOR OF THE ESTATE OF HELEN BRANSTITTER, DECEASED

*v.*

STATE OF ILLINOIS.

*Opinion filed March 3, 1919.*

GOVERNMENTAL FUNCTION—*Hospital for Insane at Jacksonville.* The State in conducting the Hospital for the Insane at Jacksonville, exercises a governmental function and is not liable for injuries received by its employees while in the discharge of their duty.

SAME—*negligence of employees of institution.* The Insane Hospital at Jacksonville is a branch of the State Government exercising a governmental function, and even though the authorities of the institution were negligent, and such negligence caused the death of claimant's intestate, still there would be no legal liability against the State.

Edward J. Brundage, Attorney General, for State.

Findings of Law and Fact made by the Court of Claims at the special request of Governor Frank O. Lowden:

The evidence in this case shows that on the 8th day of January, in the year 1918, in the City of Jacksonville, Illinois, Helen Branstitter, now deceased, was an attendant and night watch at the hospital for the insane in the City of Jacksonville, Illinois; that she had charge of two wards in said asylum; that she went on duty at ten o'clock at night and quit at six o'clock in the morning. She had been acting in such capacity for a period of more than one year at the time of her death. She had under her charge sixty insane patients, and was the sole person looking after them from ten o'clock p. m. until six o'clock a. m. It was her duty to look after the patients under her, to see what they were locked up at night and to attend to any of their wants during the time she was on duty.

On the 8th day of January, 1918, about 11:00 o'clock p. m. Helen Branstitter was called into the room of one of the inmates on some pretext, where two of the female patients immediately seized her, strangled her to death and took the keys from her and escaped from the asylum. It appears from the evidence that these two insane female patients had for a number of days been conspiring to assault Miss Branstitter for the purpose of getting the keys and escaping from the asylum, and in doing so they caused her death by strangulation.

Miss Branstitter left her surviving her father, mother and four brothers and sisters, two of whom were living at home, John, age thirteen, and Elizabeth, aged nineteen. During the time that the deceased worked at the asylum she lived at home. She was past twenty years of age and was earning $31.00. Her earnings went into the

support of herself and her father and other members of the family. Her father is a man past fifty-six years of age, in fair health, a brick layer by trade, and when unable to procure employment at his trade works at common labor. He has a small home in Jacksonville, Illinois, but is dependent upon his earnings for the support of himself and his family. The exact amount that Helen Branstitter contributed to the support of her father and mother and minor brother does not appear from the evidence. The father, in his testimony, estimated the amount to be about $20.00 per month.

There was an inquest on the body of Helen Branstitter and the verdict of the Coroner's jury advised that in the future there should be one night watch in each ward, apparently feeling that the deceased was compelled to look after too many patients, and probably this was the cause of her death.

Unless it was negligence for the insane asylum authorities to put her in charge of two wards containing about sixty patients, we find no negligence on the part of the authorities of the institution.

From the foregoing evidence we find as follows:

*First*—That during the time Helen Branstitter worked for the insane asylum aforesaid, she was an employe of the State, and if the employees of the State enjoyed the benefit of the Workmen's Compensation Act, the State would be liable under said Act in probably the sum of $1,660.

*Second*—We find that the insane hospital at Jacksonville is a branch of the State Government exercising a governmental function, and that even though the authorities of the institution were negligent and such negligence caused the death of Helen Branstitter, still there would be no legal liability on the State.

We have no hesitation in saying that in our judgment it would be proper for the State in this case to make an appropriation of $2,500.